**Entered on Docket**
**October 15, 2009**
**GLORIA L. FRANKLIN, CLERK**
**U.S BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**




**Signed and Filed: October 14, 2009**

**THOMAS E. CARLSON**
**U.S. Bankruptcy Judge**

**UNITED STATES BANKRUPTCY COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re<br>NGA TUY PHAM,<br><br>Debtor. | Case No. 08-30904 TEC<br>Chapter 7 |
| NGOC LAN THI NGUYEN,<br>Plaintiff,<br>vs.<br>NGA TUY PHAM, YEN CHUNG, KENNY HUNG WAI NG, and QUAN THANH CHUNG,<br>Defendants. | Adv. Proc. No. 08-3073 TC |

**MEMORANDUM DECISION RE PHASE II OF TRIAL**

The court held phase II of the trial in this action on August 25 and 26, 2009. Robin E. Foor appeared for Plaintiff. Roberto Ripamonti appeared for Defendant.

Plaintiff contends that Defendant owes her $316,747.[1] Plaintiff seeks to have this court liquidate the amount due

[1] $264,253 plus prejudgment interest of $52,494.

Plaintiff, to have this court deny Defendant a discharge under section 727 of the Bankruptcy Code, and if Defendant is not denied a discharge, to have this court determine that Defendant's debt to Plaintiff is excepted from discharge under section 523(a) of the Bankruptcy Code. Upon due consideration, and for the reasons stated below, which shall constitute the court's findings of fact and conclusions of law, I determine that Defendant's debt to Plaintiff should not be excepted from discharge, and that Defendant should not be denied a discharge of her debts. Because there is no clear record of the amount due, and because it is unnecessary given the court's ruling re discharge and dischargeability, the court does not attempt to fix the amount due Plaintiff.[2]

**EXCEPTION FROM DISCHARGE**

A. Fraud in the Inducement

A debt is excepted from discharge if it results from fraud in the inducement. 11 U.S.C. § 523(a)(2). Where, as here, the debtor has not employed a false financial statement, the creditor must prove the following elements: (1) the debtor obtained money or property from the creditor; (2) the debtor made a misrepresentation of fact; (3) the debtor made such misrepresentation knowingly and with the intent to deceive the creditor; (4) the creditor justifiably relied upon debtor's representation; and (5) the creditor suffered damages as a result. Am. Express Travel Related Svcs. Co., Inc. v. Hashimi (In re Hashimi), 104 F.3d 1122, 1125 (9th Cir. 1997).

---

[2] Nor does the court address Plaintiff's estoppel argument because the court assumes, without deciding, that Plaintiff's claims are not time barred.

Plaintiff alleges that Defendant obtained money from Plaintiff by making various misrepresentations of fact, that the unpaid amount of the loans made in reliance on those misrepresentations is $316,747 (including prejudgment interest), and that Defendant's debt to Plaintiff should be excepted from discharge under section 523(a)(2)(A) as constituting fraud in the inducement. The court will address each of the asserted misrepresentations.

1. Loan obtained without intent to repay. Plaintiff first contends that the loans should be excepted from discharge because Defendant explicitly or implicitly promised to repay the loans, but never intended to do so.

The loans from Plaintiff to Defendant were very informal. There is only one promissory note in the amount of $25,000. The remainder of the alleged loans consist of numerous checks, some payable to Defendant, some payable to Defendant's family business, some payable to Defendant's husband, some payable to Defendant's daughter. Defendant contends that the amount Plaintiff loaned Defendant is much less than the $264,253 claimed by Plaintiff. Defendant testified that many of the checks written by Plaintiff did not represent loans to Defendant, but instead were given to Defendant in exchange for cash from Defendant's family laundry business: *i.e.* that Defendant cashed checks for Plaintiff. This testimony was corroborated by the testimony of Defendant's son.

I credit Defendant's testimony that many of the checks did not represent loans to Defendant, but were merely cashed by Defendant, and that the loan balance outstanding is substantially less than claimed by Plaintiff. In so finding, I rely in part on the fact that Defendant and her husband reported a substantial majority of

the funds received from Plaintiff as income. Loan proceeds are not income. I note that the vast majority of checks from Plaintiff were deposited in the bank accounts maintained by Defendant, her husband, and the family business. I also note that in only one year do bank deposits substantially exceed the business gross receipts reported on the tax returns filed by Defendant and her husband.[3] There is no reason to believe that Defendant would include in income checks from Plaintiff if those checks did not represent the cash receipts of the family business rather than loans from Plaintiff.[4]

There clearly were some loans from Plaintiff to Defendant. In January 2003, Defendant signed a promissory note in the amount of $25,000. In her bankruptcy schedules, Defendant listed a debt to Plaintiff in the amount of $41,891. While I cannot determine the exact amount due, it is more likely than not that the balance actually due is substantially less than the $316,747 (including prejudgment interest) claimed by Plaintiff.

It is against this backdrop that the court must determine whether Defendant obtained the loans without intent to repay. Plaintiff, of course, has no direct evidence that Defendant never intended to repay; such intent must be inferred from the

---

[3] Defendant and her husband had no source of significant income other than the family business.

[4] Only in 2003, the year Defendant signed the sole promissory note offered to document any loan from Plaintiff, did the deposits in the bank accounts of Defendant, her husband, and the family together substantially exceed (by $70,549) the gross receipts reported on Schedule C of Defendant's tax return. In 2004, bank deposits exceeded gross receipts by less than $15,000, and in 2002, 2005, 2006, and 2007, bank deposits were less than the reported gross receipts.

circumstances. Plaintiff acknowledges that Defendant repaid Plaintiff more than $41,000 over a four-year period. Defendant testified that she ceased making payments only when a dispute arose over the amount due. In light of the history of payments made, I find that Defendant did not obtain any loan from Plaintiff without intending to repay, and therefore conclude that the loans may not be excepted from discharge on that theory.

2. Posing as deceased brother's spirit. Plaintiff next asserts that Defendant fraudulently induced Plaintiff to make loans to her by calling Plaintiff on the telephone, impersonating the spirit of Plaintiff's deceased brother, and in that guise urging Plaintiff to make loans to Defendant at low interest and without documentation. Plaintiff contends that she was justified in relying upon these representations because Defendant was Plaintiff's close friend, because Plaintiff is a Buddhist who believes in spirits, and because Plaintiff is unusually gullible.

Justifiable reliance is largely a subjective test in which the sophistication of the plaintiff is taken into account. Field v. Mans, 116 S.Ct. 437 (1995). Plaintiff testified that she is a Buddhist for whom the spirits of dead relatives are very real and important, and that she has been defrauded many times and is unusually gullible. Defendant denies impersonating Plaintiff's brother.

I have serious doubts whether Defendant impersonated Plaintiff's deceased brother, but find that even if she did, Plaintiff's reliance on such a representation was not justifiable.

First, Plaintiff is not wholly unsophisticated (she attended college for two years in Vietnam).



Case: 08-03073 Doc# 85 Filed: 10/14/09 Entered: 10/15/09 14:45:05 Page 5 of 18

Second, Defendant made no misrepresentation of material fact. A fact is material if it concerns information of the type that a reasonable person would rely upon in making a loan. The statement of the spirit of a deceased relative is not that type of information.

Third, what qualifies as justifiable reliance is not *entirely* subjective. Reliance is not justifiable when ordinary use of the senses contradicts the representation relied upon. Thus, the Supreme Court stated in Field v. Mans:

> Justifiability is not without some limits, however. As a comment to § 541 [of the Restatement (Second) of Torts (1976] explains, a person is "required to use his senses, and cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation. Thus, if one induces another to buy a horse by representing it to be sound, the purchaser cannot recover even though the horse has but one eye, if the horse is shown to the purchaser before he buys it and the slightest inspection would have disclosed the defect."

Id. 116 S.Ct. at 444. Ordinary use of the senses would have revealed to Plaintiff that her deceased brother was not talking to her.

Fourth, Plaintiff's relationship with Defendant does not eliminate the problems with her reliance upon the impersonation of a dead person. Friendship might entitle Plaintiff to rely upon certain representations by Defendant without the same inquiry that would be required if she were dealing with a stranger. For instance, Plaintiff might have been justified in relying upon Defendant's representation that the family business had a very good year and that Defendant had the resources to take on larger loans. Plaintiff's friendship with Defendant does not make it any more

justifiable for Plaintiff to make a business decision on the basis of Defendant's impersonation of Plaintiff's deceased brother.

Plaintiff's counsel urges that Plaintiff must be entitled to rely upon her religious belief in spirits as a matter of freedom of religion. This argument is unpersuasive. Plaintiff may worship and believe as she chooses. Plaintiff is also free to make business decisions on the basis of the advice of spirits. Plaintiff has cited no authority holding that she can rely on religious belief to prove that such a method of decision making is justifiable for the purpose of a civil fraud suit. To hear audibly the voice of a dead relative is a supernatural event. That it can happen is a matter of religious belief, not a matter of fact. Plaintiff seeks to use her religious belief to show that reliance on the voice of her deceased brother is justifiable, and then shifts to the realm of fact to show that Defendant pretended to be, but was not, the spirit of her deceased brother. Plaintiff has cited no authority that a party can mix the realms of fact and religious belief in the way she seeks to do.

3. <u>Fish sauce investment</u>. Plaintiff next contends that, in February 2002, Defendant induced her to invest $9,000 in a fish sauce business that Defendant was to start in Vietnam, and that Defendant instead kept the money for her own use. Plaintiff testified that Defendant told Plaintiff that Defendant's uncle owned the leading fish sauce company, that Defendant had personally developed the formula for that product, and that Defendant would use this knowledge to start a business competing with her uncle's business. Plaintiff testified that Defendant never started the business and never repaid Defendant.



Case: 08-03073 Doc# 85 Filed: 10/14/09 Entered: 10/15/09 14:45:05 Page 7 of 18

Defendant testified that she did not obtain any funds from Plaintiff for investment in a fish sauce business.

I find that Defendant did not obtain any money from Plaintiff by representing that it would be invested in a fish sauce business. First, it is doubtful that Defendant transferred $9,000 to Defendant at the time in question. The only written evidence of such a transfer is Plaintiff's withdrawal of $7,500 in cash from her savings account on February 15, 2002, and her handwritten note that she transferred $9,000 to Defendant. There is no evidence of a deposit in that amount on or about February 15, 2002 in any of the bank accounts of Defendant or her husband. Second, there is no documentation of any investment in a business to be formed. Plaintiff does not even state what share she was to receive for her investment. Third, Plaintiff did not complain about not receiving her share of the business until after Defendant filed her bankruptcy petition more than six years after the alleged transfer to Defendant. I find that if Plaintiff did advance the $9,000 in question, it was a loan to Defendant, and that loan was not made upon the representation that the proceeds would be used to start a fish sauce business.

4. Vietnam land purchase. Plaintiff testified that she advanced $76,835 to Defendant in April 2005 upon Defendant's representation that Defendant would forward those funds to Defendant's sister in Vietnam, that the sister would purchase land in Vietnam for Plaintiff, and that the sister would manage that land for Plaintiff. Plaintiff testified that she never received land in Vietnam and that Defendant defrauded Plaintiff of the $76,835 by diverting that money to Defendant's own use.

Defendant testified that she never received money from Plaintiff for the purchase of land in Vietnam, and that none of her sisters were living in Vietnam in 2005. Defendant acknowledged that she received a much smaller sum from Plaintiff for transfer to Vietnam, but that those funds were intended to be given to, and were in fact given to, a Vietnamese charity. Defendant also acknowledged receipt of other funds from Plaintiff in April 2005, but testified that those funds were loans from Plaintiff, repayment of prior loans to Plaintiff, or cashing of checks for Plaintiff.

I find that Plaintiff did not transfer funds to Defendant for the purpose of acquiring land in Vietnam, and that Defendant did not commit fraud with respect to the funds transferred to her in April 2005. In so finding, I note that there was no meaningful documentation of any transfer of funds for the purchase of land, and that Plaintiff would have insisted upon such documentation because she had been defrauded in the purchase of land in a previous transaction with another party. Plaintiff made loans to Defendant, but the evidence does not indicate that the loans were made upon the representation that the funds would be invested for Plaintiff in land in Vietnam.

5. Altered check. On April 12, 2005, Plaintiff wrote a check to Defendant that is internally inconsistent regarding the amount payable. In words, the check states the amount payable to be “two thousand dollars.” In numerals, the check states the amount payable to be “$20,000.” Plaintiff testified that in writing the check, she wrote the numerals “$2,000," and that Defendant altered the check by adding an extra zero. Plaintiff also asserts that Defendant submitted the check with a deposit slip showing the

amount payable as $20,000, knowing that Plaintiff intended to pay her only $2,000.

Plaintiff did not introduce any expert testimony as to whether the check had been altered. Plaintiff did not introduce evidence that she complained either to Defendant or to her bank about the amount transferred via the check in the three years between her bank's payment of $20,000 and the filing of Defendant's bankruptcy petition.

Defendant testified that she did not alter the check or notice the inconsistency in the check. Defendant, who testified at trial through an interpreter, stated that she does not read English, and that she relied solely upon the numerals when filling out the deposit slip at the time she deposited the check.

I find that Defendant did not alter the check, and did not deposit the check knowing that Plaintiff had made a mistake in stating the amount to be paid.

B. Other Theories re Exception to Discharge

Plaintiff's counsel urges in his trial brief that Plaintiff and Defendant had such a close relationship that Defendant had a fiduciary duty to Plaintiff, that the acts described above constitute fraud by a fiduciary, and that Defendant's debt to Plaintiff should therefore be excepted from discharge pursuant to section 523(a)(4) of the Bankruptcy Code. This argument is unpersuasive, because case law makes clear that section 523(a)(4) applies only where an express trust was imposed before, and without reference to, the wrongdoing that caused the debt. Ragsdale v. Haller, 780 F.2d 794, 795-96 (9th Cir. 1986). Plaintiff introduced no evidence of an express trust.

Plaintiff's counsel also urges that the Defendant's debt to Plaintiff should be excepted from discharge under section 523(a)(6) on the basis that Defendant's conduct constituted willful and malicious injury. This argument is also unpersuasive. To prove willful and malicious injury, Plaintiff must show that Defendant intentionally performed an act with the subjective knowledge that such act was substantially certain to cause harm to Plaintiff. Carrillo v. Su (In re Su), 290 F.3d 1140, 1144-45 (9th Cir. 2002). On the basis of the evidence introduced at trial, I find that Defendant performed no acts with such intent and knowledge.

**DENIAL OF DISCHARGE**

A. False Oath

Section 727(a)(4)(A) provides that a court shall deny a debtor a discharge if "the debtor knowingly and fraudulently," in or in connection with a bankruptcy case "made a false oath or account." To deny discharge under this provision, the plaintiff must show that "(1) the debtor knowingly and fraudulently made a false oath; and (2) the false oath related to a material fact." Fogal Legware of Switzerland, Inc. v. Wills (In re Wills), 243 B.R. 58, 62 (9th Cir. BAP 1999). Plaintiff asserts that Defendant made several false statements in connection with her chapter 7 case.

1. Jewelry. Plaintiff notes that the only jewelry Debtor disclosed in her bankruptcy schedules was a ring and watch valued together at $500. Plaintiff contends that Defendant in fact owned additional jewelry and deliberately failed to schedule that additional jewelry.

Plaintiff offered no direct evidence that Defendant had jewelry on the petition date that she failed to disclose. Instead,



Case: 08-03073 Doc# 85 Filed: 10/14/09 Entered: 10/15/09 14:45:05 Page 11 of 18

Plaintiff introduced the following checks to show that Defendant had purchased jewelry of substantial value pre-petition.

| | Date | Payee | Amount | Deposited by / in |
|---|---|---|---|---|
| 1. | December 12, 2002 | Cash | $1,369 | an Antwerp bank |
| 2. | April 4, 2003 | Cash | $1,000 | Vincent Ma Gems |
| 3. | August 4, 2003 | (illegible) | $1,194 | an Antwerp bank |
| 4. | February 20, 2004 | Tang Huynh | $2,000 | T. Huynh, a jeweler |
| 5. | March 25, 2004 | Cash | $1,086 | Quoc Long Jewelry |
| 6. | August 2, 2004 | Anvir Diamonds | $1,076 | Anvir Diamonds |

Plaintiff also testified that in December 2004, she accompanied Defendant to a pawn shop, where Defendant paid to recover numerous items of jewelry. On cross-examination, Plaintiff acknowledged that she rarely if ever saw Defendant wearing jewelry, stating that Plaintiff was not the kind of person who wore jewelry.

Defendant testified that on the petition date she did not own any jewelry other than the watch and ring she disclosed. She testified that checks 1-3 and 5-6, noted above, were used to purchase jewelry for friends and relatives visiting from out of town, and that in substance she cashed those checks for her visitors. Defendant testified that check 4 was used to purchase jewelry for her daughter and grandchildren, which testimony was corroborated by the testimony of her daughter. Defendant acknowledged that she went to a pawn shop in December 2004, but testified that she did so to surrender jewelry and borrow against it, not to recover jewelry previously pledged.

On the evidence submitted at trial, I cannot say that it is more likely than not that Plaintiff failed to disclose jewelry in her bankruptcy schedules. In so finding, I note that: (a) even according to Plaintiff, Defendant had been forced to pawn jewelry at a date after Defendant's participation in all of the purchases noted above; (b) Plaintiff herself testified that she has rarely,

if ever, seen Defendant wearing jewelry; (c) Defendant's tax returns show that her family never enjoyed a large income from which to buy jewelry; and (d) no one testified to seeing Defendant post-petition in possession of any jewelry other than the ring and watch disclosed.

2. Community property interest in laundry. Plaintiff contends that Defendant falsely stated in her schedules that the Yen Laundromat and Cleaners was her husband's property rather than community property. While it is very likely that the business is community property, I find no credible evidence that Defendant misstated its character intentionally and with intent to defraud. Defendant is not sophisticated or well educated and is not well-versed in the concept of community property. More important, the property was listed in the schedules and the trustee would have investigated whether the property was community or separate property if that question ever became important. Defendant gained no advantage by listing it as community property. There being no direct evidence of intentional misstatement and intent to defraud, and Defendant gaining no advantage as result of the statement, the circumstances do not justify an inference that Defendant misstated the character of the property intentionally and with intent to defraud.

3. Authority to sign checks. Plaintiff next contends that Debtor falsely testified that only her husband was authorized to write checks on the Yen Laundromat checking account at Gateway Bank. I find that Debtor is not guilty of a false statement within the meaning of section 727 for two reasons. First, Plaintiff did not show that the statement was false. Plaintiff did not introduce

the signature card for the account; she showed only that Debtor signed a few checks. Second, and more important, neither the circumstances nor any direct evidence suggests that any misstatement by Debtor was made intentionally and with intent to defraud.

4. Laundry income. Plaintiff next contends that Debtor understated the monthly income of the laundry business. In her Schedule I, Debtor lists the monthly income of the business as $794. Debtor's tax return for 2007 shows $6,145 annual net income from the laundry business, which works out to monthly net income of $512, less than the amount shown in Debtor's bankruptcy schedules.[5] The only evidence Plaintiff introduced to show that the laundry income was understated was a reconstruction of expected income based on an IRS formula and using per-load prices charged by other laundries at a time more than a year after Debtor filed her petition. I find that Debtor did not knowingly and fraudulently misstate the income of the laundry business.

5. Amount of Nguyen claim. Plaintiff contends that Defendant falsely stated in her schedules that the amount Defendant owed Plaintiff was only $42,800, rather than the $316,747 Plaintiff claims. I find that Defendant in good faith believed that she correctly stated the amount owed. As noted above, Defendant testified that many of the checks from Plaintiff were not loans, but were given in exchange for cash from the laundry, and as noted

---

[5] Debtor's tax returns for 2002-2007 show $9,360 average annual income from the laundry, which works out to monthly income of $780. The laundry income shown in Debtor's tax returns declined every year, from a high of $12,976 in 2002, to less than half that in 2007.

above, I credit that testimony. Thus, the debt was less than the amount claimed by Plaintiff. The loans were very informal and hardly documented at all. Plaintiff did not keep a loan ledger and did not provide Defendant with statements of the balance due. To the extent that Defendant did misstate the amount due, I find that she did not make that misstatement intentionally and with the intent to defraud.

6. Opening of jewelry store. Plaintiff asserts that Defendant testified falsely at Phase I of the trial. Defendant testified at Phase I that she selected and paid for certain jewelry at the February 2004 grand opening of a jewelry store operated by Tran Huynh. At Phase II of the trial, Plaintiff introduced evidence that the grand opening of Mr. Huynh’s store did not occur until May 2004. Plaintiff asserts that Defendant deliberately lied in her testimony.

Assuming arguendo that the misstatement was material, I find that Defendant did not make the misstatement intentionally and with intent to defraud. The question at Phase I to which the purchase of jewelry from Mr. Huynh was relevant was whether Defendant’s daughter exercised dominion and control over the proceeds of a January 20, 2004 cashier’s check in the amount of $8,500 that was made payable to Defendant’s daughter, but requested by and delivered to Defendant. Defendant and Defendant’s daughter both testified that Defendant directed the use of all the proceeds of that check, including the $2,000 paid Mr. Huynh for jewelry. Mr. Huynh’s testimony supported the testimony of Defendant and her daughter regarding this crucial point – he testified that it was Defendant who gave him a $2,000 check and that he had no dealings

with the daughter.  Mr. Huynh also testified that he did show jewelry to friends and acquaintances before the grand opening, and that it was at such a showing that Defendant selected a bracelet and several chains.  I note that all the witnesses were testifying about events that occurred more than five years before and that were not matters of great import when they did occur.  On the basis of the evidence introduced at Phase I and Phase II, I find that any misstatement by Defendant regarding the date of the grand opening and the circumstances in which Defendant paid Mr. Huynh was the product of failure to recollect correctly and was not made knowingly and with intent to defraud.

B.  Failure to Explain Loss of Assets

Plaintiff urges finally that Defendant should be denied discharge pursuant to section 727(a)(5), because Defendant has failed to account for the dissipation of the $264,253 that Plaintiff contends Defendant borrowed and has not repaid.

To prevail under section 727(a)(5), Plaintiff must show that some specific asset is missing.  The burden then shifts to Defendant to provide an explanation regarding the loss of that asset.  Leimbach v. Lane (In re Lane), 302 B.R. 75, 82 (Bankr. D. Idaho 2003).

Plaintiff has not shown that Defendant borrowed the full $264,253 claimed by Plaintiff.  As explained above, I find that a substantial dollar amount of the checks delivered to Defendant were not loans from Plaintiff, but were in exchange for cash receipts of the Yen Laundromat and Cleaners.  Thus, the loan proceeds whose loss must be explained is substantially less than the amount assumed by Plaintiff.



Case: 08-03073 Doc# 85 Filed: 10/14/09 Entered: 10/15/09 14:45:05 Page 16 of 18

Defendant’s records offer a credible explanation of the non-fraudulent disposition of the loan proceeds – that they were simply spent by this low-income family over the six years of the lending relationship. As noted above, the bank records of Defendant and her husband indicate that the vast majority of the checks from Plaintiff went into the bank accounts of Defendant and her husband. There are no unexplained transfers of large sums out of those accounts. The amount loaned was substantially less than the $264,253 claimed by Plaintiff. The tax returns filed by Defendant and her husband show an average annual adjusted gross income of $17,720 for calendar years 2002-2007. Furthermore, Defendant’s family income declined from $19,862 in 2005 to $9,539 in 2007, so that Defendant would have found it more and more compelling to use loan proceeds for ordinary living expenses, and harder and harder to repay the loan. In light of all the evidence, it is more likely than not that Defendant and her family gradually spent the loan proceeds on normal living expenses. I find that Defendant has adequately explained why she no longer had the loan proceeds at the time she filed her chapter 7 case.

**CONCLUSION**

Defendant should not be denied a discharge, and none of the debt owed Plaintiff should be excepted from discharge.

****END OF MEMORANDUM DECISION****

**Court Service List**

Robin E. Foor, Esq.
Law Offices of Robin E. Foor
2843 Alhambra Drive
Belmont, CA 94002

Roberto Ripamonti, Esq.
Tsao-Wu, Chow & Yee LLP
685 Market Street, Suite 460
San Francisco, CA 94105